UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION,<br><br>         **Plaintiffs,**<br><br>v.<br><br>UNITED STATES,<br><br>         **Defendant.** | Court No.: 22-00195 |

## COMPLAINT

The American Honey Producers Association and the Sioux Honey Association ("Plaintiffs"), through their attorneys, allege and state as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as this action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i).

2. Plaintiffs contest certain factual findings and legal conclusions in the U.S. Department of Commerce's ("Commerce" or the "Department") less-than-fair-value investigation of Raw Honey from India (Case No. A-533-903). The Department's Final Determination was published at Raw Honey From India: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 87 Fed. Reg. 22,188 (Apr. 14, 2022) ("Final Determination") and the accompanying Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from India (Dep't Commerce Apr. 7, 2022) ("Issues and Decision Memorandum"). Following the U.S.

International Trade Commission's issuance of its final affirmative injury determination, the Department published an antidumping duty order on imports of raw honey from India.  See Raw Honey From Argentina, Brazil, India, and Vietnam, 87 Fed. Reg. 33,831 (USITC June 3, 2022) ("USITC Final Determination"); Raw Honey From Argentina, Brazil, India, and the Socialist Republic of Vietnam: Antidumping Duty Orders, 87 Fed. Reg. 35,501 (Dep't Commerce June 10, 2022) (the "Order").

## STANDING OF PLAINTIFFS

3. The individual members of the American Honey Producers Association and the Sioux Honey Association are manufacturers, producers, and/or wholesalers in the United States of the domestic like product.  Additionally, the American Honey Producers Association and the Sioux Honey Association are trade or business associations, a majority of whose members manufacture, produce, or wholesale the domestic like product in the United States.  The American Honey Producers Association and the Sioux Honey Association were the petitioners in the underlying investigation and, thus, parties to the proceeding before the Department that led to the determination being challenged.  As such, Plaintiffs are interested parties within the meaning of sections 771(9)(C) and (E) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(C) and (E).  Accordingly, Plaintiffs have standing to bring this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4. As a result of the Department's Final Determination and the USITC Final Determination, the Order was published in the Federal Register on June 10, 2022.  Raw Honey From Argentina, Brazil, India, and the Socialist Republic of Vietnam: Antidumping Duty Orders, 87 Fed. Reg. 35,501 (June 10, 2022).  Pursuant to 19 U.S.C. § 1516a(a)(2)(i)(II) and U.S.C.I.T.

Rule 3(a), a summons was filed within 30 days of the date on which the <u>Order</u> was published in the <u>Federal</u> <u>Register</u> (<u>see</u> ECF No. 1, dated July 8, 2022), and this Complaint is timely filed within 30 days of the filing of the Summons. <u>See</u> 19 U.S.C. § 1516a(a)(2)(A)(i)(II); U.S.C.I.T. Rule 3(a)(2); Summons, ECF No. 1 (July 8, 2022).

## **STATEMENT OF CLAIMS AND BASIS FOR RELIEF**

## **COUNT I**

5. Paragraphs 1 through 4 are realleged and incorporated herein by reference.

6. The statute directs the Department to calculate a foreign respondent's costs based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles ("GAAP") of the exporting country and reasonably reflect the costs associated with the production and sale of the merchandise. 19 U.S.C. § 1677b(f)(1)(A).

7. The Department selected Allied Natural Product ("Allied") and Ambrosia Natural Products ("Ambrosia") as the mandatory respondents in this investigation and issued the antidumping duty questionnaire to both mandatory respondents.

8. Consistent with its practice, the Department instructed the respondents to submit audited financial statements, including auditors' reports, multiple times throughout the course of the underlying investigation ("Please provide the following financial documents for the two most recently completed fiscal years plus all subsequent monthly or quarterly statements: . . . audited, consolidated and unconsolidated financial statements (including any footnotes and auditor's opinion)." Despite the Department's numerous requests, the respondents failed to submit complete and audited financial statements while the record was open (<u>i.e.</u>, 30 days before the preliminary

determination). Instead, after the Department issued its preliminary determination, and shortly before administrative briefing, Allied and Ambrosia submitted documents purporting to be "audited financial statements." Record evidence, however, showed the so-called "audited financial statements" to be incomplete, lacking certain indicia of reliability required by Indian GAAP, including the auditor's stamp and signature on each page and a complete auditor's opinion. The incomplete and non-GAAP compliant nature of the submitted documents was further demonstrated by Ambrosia's attempt to submit, after case briefs were filed, documents described as "audited financial statements, an auditor's opinion, and certain appendices," which the Department correctly rejected as untimely new factual information. Thus, the Final Determination is contrary to 19 U.S.C. § 1677b(f)(1)(A) because it relies on the respondents' financial statements as submitted that were not in accordance with Indian GAAP.

9.      In the Final Determination, the Department accepted the respondents' financial statements as originally submitted (despite rejecting Ambrosia's later filing) and stated that the Department "did not specify that Allied or Ambrosia supply the accompanying audit reports" with the financial statements – a position contradicted by the record evidence and the Department's established practice.  Contrary to this finding, the Department specifically requested the financial statements and the accompanying auditor's report from both respondents in the original questionnaire. Each respondent stated that they would provide complete audited financial statements (which necessarily include the auditor's report) when they became available, and both failed to do so. The documents that were ultimately submitted lacked the typical indicia of reliability that should accompany Indian financial statements, including the auditor's report and the auditor's stamp and signature on each page of the financial statements. Accordingly, the Department's determination to accept and rely on these documents is unsupported by substantial

evidence on the record, inconsistent with its questionnaire instructions to the respondents, and inconsistent with its practice.

10.     Despite the respondents' failure to provide GAAP-compliant, complete, audited financial statements, including the auditor's report, contrary to the Department's specific request for them, the Department nonetheless determined in the <u>Final Determination</u> that the respondents did not withhold information from the record, did not fail to provide information by established deadlines that significantly impeded the proceeding, and did not provide information that cannot be verified. <u>Final Determination</u> at 31-32. That finding is unsupported by substantial evidence and not in accordance with law.

## **COUNT II**

11.     Paragraphs 1 through 10 are realleged and incorporated herein by reference.

12.     The administrative record demonstrates that both mandatory respondents are exporters that purchased raw honey directly from beekeepers, or through middleman suppliers, and then engaged in processing the raw honey before re-selling it to customers in India and the United States. The Department correctly determined that the beekeepers, not the mandatory respondents, are the producers of the subject merchandise because the raw honey respondents purchased is already within the scope of the investigation and reflects the essential characteristics of the merchandise under consideration and that the processing performed by the respondents is minimal and does not result in significant changes to the subject merchandise.

13.     For these reasons, the Department explained that it would normally determine the cost of production ("COP") of the honey purchases using the actual COP of the beekeepers and middlemen suppliers. The Department instead departed from its normal practice and determined

it was appropriate to rely on the respondents' acquisition costs as a proxy for the honey COP. The Department reasoned that problems in prior honey and agriculture cases, the large volume of small unsophisticated beekeepers in India, and the failure of many of these beekeepers to keep adequate records warranted the use of acquisition costs as a proxy for COP in this investigation.

14. To determine if the respondents' acquisition costs were a reasonable proxy for the beekeepers' COP, the Department compared the respondents' acquisitions costs to the beekeepers' admittedly incomplete and unreliable reported costs and determined that the acquisition costs were a reasonable proxy for the COP of raw honey. To conduct this analysis, the Department compared respondents' acquisition costs to COP information from two of Allied's middlemen-suppliers and two beekeeper-suppliers to those middlemen, and from Ambrosia's one direct beekeeper-supplier, one middleman, and its beekeeper-supplier, to test whether a reliance on the exporter-respondents' acquisition costs was reasonable. The Department relied on this COP information obtained from the beekeepers and middlemen suppliers, despite the information being incomplete, unreliable, and unusable as a basis for calculating normal value.

15. The Department's <u>Final Determination</u> is not supported by substantial evidence on the record. As was documented in the investigation, the beekeeper and middlemen suppliers' reported data are incomplete and unreliable. The Department acknowledged that small beekeepers, such as those that provided COP information in this investigation, have limited records, limited technology, and often rely on "assumptions and estimates" rather than actual, verifiable records. The Department also admitted that it had declined to use such beekeeper data in previous honey cases because the data provided by small beekeepers was incomplete and unreliable. It was in part for this reason that the Department resorted to the use of acquisition cost as a proxy for COP in this proceeding. Plaintiffs also identified numerous specific flaws in the reported costs of the

beekeepers and middlemen. Despite the Department's acknowledgement that small beekeepers and middlemen "are unable to provide usable cost data due to their small unsophisticated nature and limited records," and the specific, significant flaws that Plaintiffs identified in the suppliers' responses, the Department relied on the suppliers' COP responses to determine that respondents' acquisition costs were a reasonably proxy for the COP of raw honey. In contrast, in previous honey cases, the Department relied on alternative cost benchmarks when faced with flawed and unreliable data.  Plaintiffs also provided numerous other reliable cost benchmarks which demonstrated the costs provided were neither reasonable nor usable for validating respondents' reported costs.  The Final Determination is not supported by substantial evidence because the Department relied on the unreliable, incomplete, and otherwise unusable beekeeper and middleman cost data to validate the respondents' acquisition costs and failed to adequately consider other benchmarks on the record that were complete and reliable.

## COUNT III

16. Paragraphs 1 through 15 are realleged and incorporated herein by reference.

17. Section 773(a)(1)(B)(i) of the Act defines normal value as "the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B)(i). Pursuant to section 771(15) of the Act, Commerce shall find "sales and transactions" to be "outside the ordinary course of trade" in situations in which it "determines that the particular market situation prevents a proper comparison with the export price or constructed export price." 19 U.S.C. § 1677(15).

18.     Section 504 of the Trade Preferences Extension Act of 2015 ("TPEA") added the concept of a "particular market situation" to the definition of the term "ordinary course of trade." Specifically, section 504 (codified at 19 U.S.C. § 1677b(e)) provides that "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade," the Department is authorized to use an alternative methodology for constructing normal value. See Trade Preferences Extension Act of 2015, H.R. 1295, 114th Cong. § 504 (2015-16). The Department has further explained that "where a PMS affects the COP for the foreign like product through distortions to the cost of inputs, it is reasonable to conclude that such a situation may prevent a proper comparison of the export price with normal value based on home market prices just as with normal value based on CV." See Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review of Corrosion-Resistant Steel Products from the Republic of Korea; 2016-2017 at 11 (Dep't Commerce Mar. 18, 2019); ref'd in 84 Fed. Reg. 10,784 (Mar. 22, 2019).

19.     In the underlying investigation, Plaintiffs submitted extensive evidence to demonstrate that the pervasive adulteration of retail honey in India with sugar syrups reduced the price of raw honey throughout the domestic Indian market. The Department nonetheless found that Plaintiffs did not demonstrate that the price effects of the adulteration of retail honey could be pervasive enough to affect prices for raw honey throughout other segments of the Indian honey market. See Final Determination at 14-15.

20.     The Department's Final Determination is not supported by substantial evidence and is arbitrary and capricious. The Department's analysis is incomplete because it ignores substantial evidence presented by Plaintiffs that demonstrated the price effects of adulterated retail honey on the Indian market, rendering the Department's findings unsupported by substantial evidence.

Further, the Department attacks and attempts to discredit both specific data and data sources submitted by the Plaintiffs as unreliable or disparate; despite itself relying on similar data and sources as reliable in both this investigation and previous investigations. The Department, among other things, discredited a data point from a news article that it claims does not provide a source for the quoted figure, despite relying on and finding credible similar data points from other news articles in other instances during the investigation that are not any more specifically sourced. While the Department may weigh the credibility of various sources, it must provide a consistent and reasoned explanation for doing so and must take into account all record information that detracts from its findings. The Department failed to do so in this case in numerous instances. The Department's determination to treat similar data sources inconsistently and to take into account all detracting information sources from those it relied upon is arbitrary and capricious and not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     Hold that Commerce's Final Determination is not supported by substantial evidence, arbitrary and capricious, and is otherwise not in accordance with law with respect to the claims advanced by Plaintiffs in this Complaint;

(b)     Remand the Final Determination to Commerce with instructions to correct the errors set forth in this Complaint; and

(c) Provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ Matthew G. Pereira
MATTHEW G. PEREIRA
R. ALAN LUBERDA
MELISSA M. BREWER
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400
mpereira@kelleydrye.com
aluberda@kelleydrye.com
mbrewer@kelleydrye.com
jmorey@kelleydrye.com

Counsel to Plaintiffs

Dated: August 5, 2022

## CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

**American Honey Producers Association and Sioux Honey Association v. United States**
**CIT Court No. 22-00195**

Pursuant to Rule 3(f) of the Rules of the U.S. Court of International Trade, I, Matthew G. Pereira, hereby certify that on August 5, 2022, a copy of the foregoing Complaint was served upon each of the following individuals and notified all the interested parties who were a party to the proceeding below, by certified or registered mail, return receipt requested:

**Upon the United States:**

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278-0001

Bryan M. Boynton
Principal Deputy Assistant Attorney General
Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW, Room 12124
Washington, DC 20530

**Upon the U.S. Department of Commerce:**

General Counsel
U.S. Department of Commerce
14th Street & Constitution Avenue, NW
Washington, DC 20230

Ms. Evangeline Keenan, Esq.
Director, APO/Dockets Unit
U.S. Department of Commerce
14th Street & Constitution Avenue, NW
Room 1874
Washington, DC 20230

**On behalf of National Honey Packers & Dealers Association, whose members include Apimiel GmbH, Ashurst's American Honey, Barkman Honey, LLC, Bee Maid Honey, Best Food Supplies Corp., Burleson's, Inc., C.M. Goettsche & Co., CPNA International, Ltd., Deer Creek Honey Farms, Delta Food International Inc., Dutch Gold Honey, Fischer Honey Company, Inc., GloryBee Inc., Grizzly Bear Honey LLC, Honey Holding Co., HoneyTree Inc., Lamex Foods Inc., Local Hive Honey (formerly Rice's Honey), Miller's Honey Company Inc., Nature Nate's, Odem International Inc., Prairie Imports LLC, Providence Foods Corp, Pure Sweet Honey Farm, Queen of America, Smitty Bee Honey, Sunland Trading Inc., Suzanne's Specialties, Sweet Harvest Foods LLC, The Impex Group Inc.:**

Gregory J. Spak, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Phone: 202-626-3600
Email: gspak@whitecase.com

**On behalf of Madison Honey Imports LLC:**

Jeffrey S. Grimson, Esq.
Mowry & Grimson PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015
Phone: 202-688-3610
Email: jsg@mowrygrimsom.com

**On behalf of Allied Natural Product; Shakti Apifoods Pvt. Ltd.:**

Robert G. Gosselink, Esq.
Trade Pacific PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC 20003
Phone: 202-223-3760
Email: rgosselink@tradepacificlaw.com

**On behalf of Export Packers Company Limited:**

Jeffrey S. Neeley, Esq.
Husch Blackwell LLP
750 17th Street, NW
Suite 900
Washington, DC 20006
Phone: 202-378-2357
Email: jeffrey.neeley@huschblackwell.com

**On behalf of Ambrosia Natural Products India Pvt. Ltd.:**

Jaidev Singh
Ambrosia Natural Products India Pvt. Ltd.
Office Address: 47A, Satyam Enclave, Jhilmil, Delhi 110095
Works: Village Post Pandera, Distt. Baghpat, Uttar Pradesh 250620 India
Phone: 911122144474
Email: jaidev@anphoney.com

        /s/ Matthew G. Pereira
        MATTHEW G. PEREIRA
        KELLEY DRYE & WARREN LLP