**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION,

Plaintiffs,

v.

UNITED STATES,

Defendant,

and

ALLIED NATURAL PRODUCT AND AMBROSIA NATURAL PRODUCTS (INDIA) PVT. LTD.,

Defendant-Intervenors.

Court No. 22-00195

**DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

**Submitted by:**

**Robert G. Gosselink**
**Jonathan M. Freed**
**Aqmar Rahman**
**TRADE PACIFIC PLLC**
**700 Pennsylvania Avenue, SE**
**Suite 500**
**Washington, D.C. 20003**
**Tel.: (202) 223-3760**

***Counsel to Allied Natural Product and Ambrosia Natural Products (India) Pvt. Ltd.***

**Dated: April 24, 2023**

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………………...ii

RULE 56.2 STATEMENT………………...…………………………………………………...1

I. Administrative Decision Under Review...………………………………………...1

II. Statement of the Issues…….…………………………………………………...1

STATEMENT OF FACTS...……………………………………………………………...2

STANDARD OF REVIEW..………………………………………………………………...2

ARGUMENT……………………………………………………………………………...3

I. Commerce's Reliance on the Processors' Honey Acquisition Costs As a Proxy for the Cost of Production of Raw Honey Is Supported by Substantial Evidence.......................................................................................3

II. Commerce Correctly Determined That Applying Adverse Facts Available With Respect to the Processors' Financial Statements Was Not Warranted……...7

CONCLUSION……………………………………………………………………………..12

**TABLE OF AUTHORITIES**

**Judicial Precedent**

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ..................................................2

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) .................................................. 2-3, 6

*INS v. Elias-Zacarias*, 502 U.S. 478 (1992) ..................................................3

*Fujitsu General Limited v. United States*, 88 F.3d 1034 (Fed. Cir 1996)..................................................6

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)..................................................2

*Olympic Adhesives, Inc. v. United States*, 899 F.2d. 1565, 1672 (Fed. Cir. 1990)..................................................8

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012)..................................................11

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ..................................................2

*Deacero S.A.P.I. de C.V. v. United States*, 353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ..................................................11

*Goodluck India Limited v. United States*, 393 F. Supp. 3d 1352 (Ct. Int'l Trade 2019)..................................................11

*Nucor Corp. v. United States*, 612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009)..................................................3

**Statute and Regulations**

19 U.S.C. § 1516a(b)(1)(B)(i)..................................................2

19 C.F.R. § 351.301(a).................................................. 7-8

19 C.F.R. § 351.301(c)(1)..................................................8, 9

19 C.F.R. § 351.301(c)(5)..................................................9, 10

**Administrative Determinations**

*Carbon and Alloy Steel Wire Rod from Italy: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 13230 (March 28, 2018)..................................................9

*Countervailing Duty Investigation of Stainless Steel Sheet and Strip from the People's Republic of China: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, In Part*, 82 Fed. Reg. 9717 (February 8, 2017) ..................................................8-9

*Definition of Factual Information and Time Limits for Submission of Factual Information*, 78 Fed. Reg. 21246 (April 10, 2013)……………………………………………………………7

*Raw Honey From India*, 87 Fed. Reg. 22,188 (April 14, 2022) .......................................... *passim*

*Raw Honey From Argentina, Brazil, India, Ukraine, and the Socialist Republic of Vietnam: Postponement of the Preliminary Determinations in the Less-Than-Fair-Value Investigations*, 86 Fed. Reg. 47624 (August 26, 2021) ..........................................................................................10

**DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Defendant-Intervenors, Allied Natural Product ("Allied") and Ambrosia Natural Products (India) Pvt. Ltd. ("Ambrosia"), respectfully submit this response in opposition to the Rule 56.2 motion for judgment on the agency record filed by plaintiffs, American Honey Producers Association and Sioux Honey Association (collectively, "AHPA" or "Plaintiffs"), AHPA Br. ECF 21, challenging certain aspects of the final determination of the U.S. Department of Commerce in the less-than-fair-value investigation of raw honey from India. As described below, Commerce's determination is supported by substantial evidence and is otherwise in accordance with law. Accordingly, the Court should deny plaintiffs' motion and enter judgment in favor of the United States.

**RULE 56.2 STATEMENT**

**I. Administrative Decision Under Review**

The administrative determination under review is the U.S. Department of Commerce's ("Commerce's") final determination in the less-than-fair-value investigation of raw honey from India. *See Raw Honey From India*, 87 Fed. Reg. 22,188 (April 14, 2022) (PR 356) and accompanying Issues and Decision Memorandum ("IDM") (PR 346).

**II. Statement of the Issues**

Whether Commerce's use of Allied's and Ambrosia's raw honey purchase costs as a proxy for the raw honey costs of production of their upstream beekeeper suppliers is supported by substantial evidence and in accordance with law when Commerce compared certain beekeepers' honey costs of production to the processors' actual acquisition costs of such honey and determined that the acquisition costs included all costs, expenses, and profits of the beekeepers and middlemen involved in the production, collection, and sale of the raw honey.

Whether Commerce's decision not to assign adverse facts available to Allied and Ambrosia was supported by substantial evidence when Allied and Ambrosia fully explained their inability to provide their 2020-2021 financial statements in their original and supplemental questionnaires, and nonetheless provided their audited financial statements in their in-lieu-of-verification questionnaire responses, which was the earliest opportunity for them to do so.

## STATEMENT OF FACTS

Defendant-Intervenors agree with the statement of facts, as presented in Defendant's response brief (ECF 28 at 2-11).

## STANDARD OF REVIEW

The applicable standard of review is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i). Pursuant to the statute, the Court holds unlawful any determination found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In evaluating Commerce's determination, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

Defendant-Intervenors, Allied and Ambrosia, agree with the discussion of the standard of review, as well as the criteria under which Commerce applies facts available with an adverse inference, set forth in Defendant's response brief (ECF 28 at 12-15). Defendant-Intervenors reiterate that whether the Court might draw a different conclusion from the record "does not

prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted). When Congress has entrusted an agency to administer a statute that demands inherently fact intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

## ARGUMENT

Commerce's reliance on Allied's and Ambrosia's reported raw honey acquisition costs as the basis on which to calculate costs of production is supported by substantial evidence and in accordance with law. Substantial evidence also supports Commerce's determination not to apply adverse facts available to Allied and Ambrosia with respect to the submission of their audited 2020-2021 financial statements. In accordance with the Court's Order of October 7, 2022, (ECF 19), Defendant-Intervenors limit their discussion below to arguments not included in the earlier-filed response brief of Defendant, the United States (ECF 28).

### I. Commerce's Reliance on the Processors' Honey Acquisition Costs as a Proxy for the Cost of Production of Raw Honey Is Supported by Substantial Evidence

Commerce's calculation of the costs of production for Allied and Ambrosia using the acquisition costs for the raw honey that they purchased from their beekeeper and middlemen suppliers plus their own additional honey processing costs is supported by substantial evidence and in accordance with law. Defendant-Intervenors agree with, and fully support, Defendant's arguments in response to Plaintiffs' unsupported claim that Commerce's use of honey acquisition costs as a proxy for the cost of production of raw honey was unlawful. Defendant-Intervenors supplement Defendant's arguments with a few additional observations.

First, it is important to clarify at the outset that Commerce did not use the beekeepers' and middlemen suppliers' costs as "benchmarks" for determining the cost of honey, as Plaintiffs claim. *See* AHPA Br. at 34 ("the beekeeper and supplier costs were not a reasonable benchmark for demonstrating the acquisition costs were appropriate), 40 ("that the costs are not representative is both the grounds to reject them as a benchmark and …"), 41 ("the agency determined the {beekeeper and middleman supplier costs} is an appropriate benchmark), 42 ("for the same reasons that the supplier costs cannot be used to calculate COP, they are not a reliable benchmark"), 43 (the "supplier data cannot be used as an appropriate benchmark"), 45 ("Given that the beekeeper and middleman supplier cost information is not verifiable … the Department's use of this information as a benchmark is not supported by substantial evidence"). Plaintiffs' frequent and recurring reference to the beekeeper and middleman supplier costs as a "benchmark" evidences a misunderstanding both of Commerce's calculations and of Commerce's calculation goals.

Rather than use the actual costs of the beekeepers and middlemen suppliers to establish a benchmark as a "representative standard" or "point of reference" for all raw honey costs, Commerce compared the beekeepers' and middlemen suppliers' actual costs to the actual prices that the same middlemen suppliers charged to Allied and Ambrosia to determine whether the beekeepers and middlemen were selling above their actual costs of production for the raw honey, and thus whether Allied's and Ambrosia's acquisition costs were not missing costs and were reliable for purposes of calculating COP. *See* IDM at 26-27.

Specifically, for Allied, Commerce analyzed the POI COP submitted by two middlemen suppliers and their raw honey beekeeper suppliers, to determine whether the POI acquisition costs paid by Allied to the middlemen suppliers, "on a test basis," were above the COP for the

raw honey purchased. *See Memorandum Re. Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Allied Natural Product* (Nov. 17, 2021), PR 261, at 2. Commerce obtained the *actual* COP of the beekeepers and added the *actual* middlemen costs, excluding the cost of raw honey. Based on this exercise, Commerce found that the POI acquisition cost paid by Allied to its middlemen suppliers was "above the raw honey COP and middlemen costs." *Id.* Commerce conducted the same analysis with the same results for Ambrosia, thus confirming for both Allied and Ambrosia that there was no reason to believe that the beekeepers and middlemen suppliers sold the honey below their COP. IDM at 27.

An understanding of the particular purpose of Commerce's methodology is important because it illustrates that even though Commerce's sampling of certain beekeeper costs did not result in *representative costs of production* for ***all*** the raw honey that Allied and Ambrosia purchased, *see* IDM at 25-26, Commerce nonetheless could use the actual cost data of these specific beekeepers and middlemen suppliers to test whether the prices paid to the same suppliers for the same honey were reliable for purposes of calculating COP. By focusing on the largest honey suppliers to Allied and Ambrosia, and then selecting from among those suppliers the beekeepers with the lowest sale prices, Commerce adopted a price comparison methodology that was both reasonable and logical. If these beekeepers were selling their raw honey at prices above their COP, Commerce could reasonably determine that reliance on Allied's and Ambrosia's ultimate acquisition costs would not result in missing costs. IDM at 26.

Based on their cost/price comparisons, Commerce found that the largest honey suppliers with the lowest prices nonetheless were selling raw honey at prices that exceeded their actual costs of production. IDM at 26-27. This evidence supported Commerce's conclusion that even higher raw honey selling prices also were not below COP, and that because Allied's and

Ambrosia's acquisition costs were higher than the costs of production, the acquisition costs thus were not missing costs, and could serve as a reasonable proxy for costs of production. *See id.*

In contrast to Commerce's reliance on actual record evidence, Plaintiffs speculate in their brief that "higher-priced sales are just as likely to be sold below the cost of production as low-priced sales," and that "higher-priced sales are *more likely* to come from more sophisticated operations with higher costs." AHPA Br. at 42-43 (emphasis added). Plaintiffs provide no support for their conjecture that *higher* selling prices are "just as likely" as *lower* prices to be below costs; nor do they reference the administrative record with respect to their "sophisticated operations" claim. But the main problem with their argument is that their "more likely/just as likely" arguments reveal that they simply disagree with Commerce's weighing of the evidence. The possibility of drawing two inconsistent conclusions from the record evidence, however, does not preclude Commerce's determination from being supported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). In antidumping investigations, Commerce is accorded particular deference, *see*, *e.g.*, *Fujitsu General Limited v. United States*, 88 F.3d 1034, 1039 (Fed. Cir 1996) ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts."), and the record in this case as a whole supports Commerce's reliance on the acquisition prices of Allied and Ambrosia as a proxy for the actual cost of producing honey. As such, it was both practical and appropriate for Commerce to rely on Allied's and Ambrosia's acquisition costs *plus their own processing costs* to derive the total costs of production for the merchandise under consideration that they sold. Commerce's approach does not contravene the goal of calculating accurate dumping margins, and Plaintiffs have failed to demonstrate that Commerce's approach was unreasonable.

## II. Commerce Correctly Determined That Applying Adverse Facts Available With Respect to the Processors' 2020-21 Financial Statements Was Not Warranted

Plaintiffs argue that Allied and Ambrosia "withheld" information and "impeded" the investigation because they submitted their 2020-21 financial statements in their in-lieu-of-verification questionnaire responses even though they had finalized such information earlier and had indicated to Commerce previously that they would submit the financial statements when they were available. *See* AHPA Br. at 2, 3, and 7. But Plaintiffs misunderstand the applicable law; and there is no basis for their arguments that Commerce should have applied facts available with an adverse inference to Allied and Ambrosia for not submitting their 2020-2021 financial statements earlier than when they did. *See* AHPA Br. at 2, 3, and 7. Contrary to plaintiffs' claims, Allied's and Ambrosia's 2020-21 audited financial statements were timely and properly submitted because they (1) were provided in response to Commerce's specific requests, and (2) were filed at the earliest opportunity available under the regulations. Substantial evidence thus supports Commerce's determination that Allied and Ambrosia did not withhold requested information or impede Commerce's investigation in responding to Commerce's questionnaires.

On April 10, 2013, Commerce modified its regulations to define "factual information" and to establish time limits for the submission of factual information in antidumping and countervailing duty investigations. *See Definition of Factual Information and Time Limits for Submission of Factual Information*, 78 Fed. Reg. 21246 (April 10, 2013). The purpose of the modification was to provide clarity to persons concerning the deadlines for the submission of certain factual information in a segment of a proceeding, and to describe more clearly the types of information that can be submitted by a person (or placed on the record by Commerce) in a segment of the proceeding. Pursuant to 19 C.F.R. § 351.301(a), the time limits for parties to

respond to requests for information in antidumping investigations are contained in Commerce's written questionnaires. The regulations also establish that Commerce will not consider or retain in the official record of the proceeding any unsolicited questionnaire responses or untimely filed questionnaire responses, and that Commerce will reject any untimely filed or unsolicited questionnaire responses. 19 C.F.R. § 351.301(c)(1). Commerce, in fact, routinely rejects submissions that contain untimely or new factual information that was not previously contained on the record and that was not submitted in response to a specific request from Commerce. Therefore, to the degree that Commerce already had requested Allied and Ambrosia to provide their 2020-21 financial statements and the parties could not do so at the time of Commerce's requests because the financial statements did not yet exist, Allied and Ambrosia therefore were barred under 19 C.F.R. § 351.301(c)(1) from submitting their 2020-21 financial statements later *unilaterally* when they did become available.

It is well established that Commerce may not resort to adverse facts available when respondents cannot provide information that does not exist at the time it is requested. *See*, *e.g.*, *Olympic Adhesives, Inc. v. United States*, 899 F.2d. 1565, 1672 (Fed. Cir. 1990) (acknowledging Commerce's broad discretion to use facts available, but pointing out that Commerce's resort to facts available is an abuse of discretion when the information Commerce requests does not exist). At the same time, respondents may not grant themselves an open-ended extension of time simply by announcing their ongoing efforts to collect the missing information and by promising to supply it when available in the future. Respondents may provide Commerce with previously unavailable information only if specifically (and subsequently) requested by Commerce to do so. *See*, *e.g.*, *Countervailing Duty Investigation of Stainless Steel Sheet and Strip from the People's Republic of China: Final Affirmative Determination, and Final Affirmative Critical*

*Circumstances Determination, In Part*, 82 Fed. Reg. 9717 (February 8, 2017), Decision Memorandum at Comment 11 (if Commerce treated "non-responses" as deficiencies, and had to provide a second chance to submit withheld information, parties would be able to essentially grant themselves an extension to any deadline, simply by not responding, knowing that they would be provided additional time "to remedy" the "deficiency," after Commerce issued a supplemental questionnaire). While plaintiffs fault Allied and Ambrosia for not providing their 2020-21 financial statements when immediately available, the companies acted consistently with 19 C.F.R. § 351.301(c)(1) when they waited for Commerce's instructions to provide the information rather than submit their financial statements unilaterally in advance.

Nor could Allied or Ambrosia have provided their 2020-21 financial statements earlier under another regulation. For example, to the degree that Allied's and Ambrosia's 2020-21 audited financial statements might have been construed as factual information under 19 C.F.R. § 351.301(c)(5) – as not directly responsive to or relating to a questionnaire or supplemental questionnaire response under 19 C.F.R. § 351.301(c)(1) – the companies could not have submitted the financial statements to Commerce upon finalization because they *still* would have been untimely.[1] Under 19 C.F.R. § 351.301(c)(5), the deadline in an investigation for submitting new factual information that *does not* fall under other deadlines is 30 days before the scheduled date of the preliminary determination. In this case, plaintiffs requested Commerce to postpone

[1] Defendant-Intervenors do not suggest that 19 C.F.R. § 351.301(c)(5) applies in this case. Typically, information – such as a financial statement – that is submitted that is "responsive" to original and supplemental questionnaires may not be considered new factual information under 19 C.F.R. § 351.301(c)(5). *See*, *e.g.*, *Carbon and Alloy Steel Wire Rod from Italy: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 13230 (March 28, 2018). In their brief, however, Plaintiffs have not identified pursuant to what regulation they believe Allied and Ambrosia might have submitted their 2020-21 financial statements without a request from Commerce, and therefore we provide this response in the alternative.

the preliminary determination because of their concern that Commerce would need more time to address deficiencies in the respondents' initial questionnaire responses. *See* Letter from Kelley Drye & Warrant to Commerce Requesting Postponement of Preliminary Determination (August 17, 2021), PR 133. Plaintiffs also noted that Commerce had not yet determined the cost of production methodology that it would rely on for the investigations. *Id.* Because there were no compelling reasons to deny the request, Commerce postponed the deadline for the preliminary determination until November 17, 2021. *See Raw Honey From Argentina, Brazil, India, Ukraine, and the Socialist Republic of Vietnam: Postponement of the Preliminary Determinations in the Less-Than-Fair-Value Investigations*, 86 Fed. Reg. 47624 (August 26, 2021), PR 138. As such, the deadline for the submission of any factual information under 19 C.F.R. § 351.301(c)(5) was October 18, 2021. Because Allied's and Ambrosia's 2020-21 financial statements were not finalized until after this date, neither company could have submitted the information by the 19 C.F.R. § 351.301(c)(5) deadline. As such, neither Allied nor Ambrosia could have submitted their financial statements any earlier than when requested by Commerce to do so in their responses to the in-lieu-of-verification questionnaires.

Plaintiffs essentially argue that Allied and Ambrosia should have voluntarily filed their audited 2020-21 financial statements prior to the in-lieu-of-verification responses, *i.e.*, as soon as they were available regardless of the timing of the submissions or the stage of the investigation. But, as noted above, there is no requirement that Commerce would have been required to accept such submissions even when Commerce had requested the same information earlier in the proceeding. If Commerce were required to accept late information whether in response to a questionnaire or otherwise, in disregard of deadlines established for such information, Commerce's task of completing the intensive analysis required in an investigation within the

strict deadlines prescribed by statute would become untenable. Also, if information could be provided at any time during an investigation, respondents would have less incentive to ensure the availability of such information at the time originally requested. Instead, when late submissions are necessary, Commerce can determine whether and when to request it. That is exactly what happened in this case. Allied and Ambrosia waited until they received Commerce's specific requests to provide the financial statements as part of their in-lieu of verification submission, and then submitted the financial information, as directed by Commerce. There is little doubt that if Allied and Ambrosia had voluntarily filed their late-finalized financial statements *without* Commerce's specific request for such information, plaintiffs would have complained that the financial statements were untimely, that the information could not be submitted at a time of respondents' own choosing, and that the submission should be rejected.

In this case, however, Commerce accepted Allied's and Ambrosia's audited financial statements, and indicated that plaintiffs could address them in their case briefs. Commerce was well within its rights to do so. *See PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) ("absent constitutional constraints or extremely compelling circumstances," the Court "will defer to the judgment of an agency regarding the development of the agency record" (internal bracketing, citations, and quotation marks omitted)). Moreover, Commerce is afforded considerable discretion in deciding whether to accept a respondent's information. *See, e.g.*, *Goodluck India Limited v. United States*, 393 F. Supp. 3d 1352, 1357 (Ct. Int'l Trade 2019), *citing Deacero S.A.P.I. de C.V. v. United States*, 353 F. Supp. 3d 1303, 1309 (Ct. Int'l Trade 2018). Furthermore, Commerce subsequently rejected an additional *unsolicited* financial statement submission from Ambrosia as untimely information, thus illustrating that Allied and Ambrosia could not have determined on their own to submit their financial statements as soon as

they were finalized and available. *See* Letter from Commerce to Ambrosia Rejecting Unsolicited New Factual Information (February 8, 2022), PR 322. Here, Allied and Ambrosia fully explained their inability to provide their 2020-2021 financial statements in their original and supplemental questionnaires, kept Commerce apprised of the status of their financial statements throughout the course of the investigation, and, as instructed, provided their audited financial statements in their in-lieu-of-verification questionnaire responses, which was the earliest opportunity for them to do so. Substantial evidence therefore supports Commerce's determination not to apply adverse facts available to Allied and Ambrosia with respect to the submission of their audited 2020-2021 financial statements, and to rely on their financial statements in the final determination.

## CONCLUSION

For these reasons, this Court should reject plaintiffs' challenges to Commerce's reasonable Commerce determinations and uphold Commerce's final determination as supported by substantial evidence and in accordance with law. Defendant-Intervenors Allied and Ambrosia therefore respectfully request that the Court deny plaintiffs' motion for judgment on the agency record and enter judgment for the United States.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed
Aqmar Rahman

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760

*Counsel to Allied Natural Product and Ambrosia Natural Products (India) Pvt. Ltd.*

Dated: April 24, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>ALLIED NATURAL PRODUCT AND AMBROSIA NATURAL PRODUCTS (INDIA) PVT. LTD.,<br><br>Defendant-Intervenors. | Court No. 22-00195 |

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Response Brief, dated April 24, 2023, complies with the 7,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures and the Court's Order of October 7, 2022. The memorandum of law contains 3,513 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760

*Counsel to Allied Natural Product and Ambrosia Natural Products (India) Pvt. Ltd.*

Dated: April 24, 2023