**NONCONFIDENTIAL
VERSION**

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| **AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION,** | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **UNITED STATES,** | ) ) | Court No. 22-00195 |
| Defendant, | ) ) | |
| and | ) ) | |
| **ALLIED NATURAL PRODUCT AND AMBROSIA NATURAL PRODUCTS (INDIA) PVT. LTD.,** | ) ) ) ) | |
| Defendant Intervenors. | ) ) | |

## PLAINTIFFS' REPLY BRIEF

R. ALAN LUBERDA
MELISSA M. BREWER
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
aluberda@kelleydrye.com
mbrewer@kelleydrye.com
jmorey@kelleydrye.com
mpereira@kelleydrye.com

Counsel to American Honey Producers
Association and Sioux Honey Association

May 23, 2023

NONCONFIDENTIAL
VERSION

# Table of Contents

**Page**

I.   THE DEPARTMENT'S RELIANCE ON THE RESPONDENTS' FINANCIAL STATEMENTS IS UNLAWFUL ................................................. 1

   A.   The Department's Factual Findings Under 19 U.S.C. § 1677e(a) Are Not Supported by Substantial Evidence ........................................... 1

      1.   The Respondents Withheld Information That the Department Requested and Impeded the Investigation ........................... 2

         a.   Respondents Impeded the Investigation by Withholding Their Financial Statements Until the End of the Investigation ................................................. 2

         b.   The Respondents Withheld Auditor's Reports, Which Were Requested by the Department ..................................... 4

      2.   The Respondents Provided Information That Could Not Be Verified and is Unreliable ................................................ 8

   B.   Defendant Fails to Distinguish Its Prior Determinations that the Auditor's Reports Are Necessary ........................................... 10

   C.   The Department's Finding That Respondents Acted to the Best of Their Ability Is Not Supported by Substantial Evidence .......................... 14

II.   THE DEPARTMENT'S RELIANCE ON RESPONDENTS' ACQUISITION COSTS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ................................................. 16

   A.   The Department Misstated Plaintiffs' Argument and Conducted the Wrong Analysis ........................................... 16

   B.   The Department's Finding That the Acquisition Costs Are a Reasonable Proxy for Beekeepers' COP Is Not Supported by Substantial Evidence ................................................. 19

   C.   The Department Failed to Consider Cost Data on the Record That Demonstrates the Beekeepers' COP Is Unreliable ................................ 22

III.   CONCLUSION ................................................. 23

NONCONFIDENTIAL
VERSION

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

Assan Aluminyum Sanayi Ve Ticaret A.S. v. United States,
   Slip Op. 23-26, 2023 Ct. Intl. Trade LEXIS 35 (Mar. 1, 2023)....................................4, 15-16

Goodluck India Ltd. v. United States,
   11 F.4th 1335 (Fed. Cir. 2021) ....................................................................... 3, 5-6, 15

Husteel Co. v. United States,
   491 F. Supp. 2d 1283 (Ct. Int'l Trade 2007) ...........................................................20

Husteel Co. v. United States,
   98 F. Supp. 3d 1315 (Ct. Int'l Trade 2015) ............................................................3

Itochu Bldg. Prods. Co. v. United States,
   Slip Op. 17-66, 2017 Ct. Intl. Trade LEXIS 67 (Ct. Int'l Trade June 5, 2017).....................18

Nan Ya Plastics Corp. v. United States,
   810 F.3d 1333 (Fed. Cir. 2016)..............................................................................10

Nippon Steel Corp. v. United States,
   337 F.3d 1373 (Fed. Cir. 2003)..................................................................15, 16, 22

Tianjin Mach. Import & Export Corp. v. United States,
   806 F. Supp. 1008 (Ct. Int'l Trade 1992) ..............................................................10

### **Statutes and Regulations**

19 U.S.C. 1677e(a)..............................................................................................1, 16, 17

19 U.S.C. 1677e(b) ..................................................................................................16

19 U.S.C. § 1677e(a)................................................................................................16

### **Administrative Determinations**

ii

NONCONFIDENTIAL
VERSION

Certain Iron Mechanical Transfer Drive Components From the People's Republic
of China: Final Affirmative Determination of Sales at Less Than Fair Value,
81 Fed. Reg. 75,032 (Dep't Commerce Oct. 28, 2016) and accompanying
Issues and Decision Memorandum .................................................................................. 5, 13-14

Issues and Decision Memorandum for the Final Affirmative Determination
in the Less-Than-Fair-Value Investigation of Raw Honey from India
(Dep't Commerce Apr. 7, 2022) ("IDM") (PR 346) ...................................................... *passim*

Issues and Decision Memorandum for the Final Affirmative Countervailing Duty
Determination: Certain New Pneumatic OTR Tires from China
(Dep't Commerce July 7, 2008), ref'd in, 73 Fed. Reg. 40,480
(July 15, 2008) ....................................................................................................................6

Notice of Final Determination of Sales at Less Than Fair Value:
Steel Concrete Reinforcing Bars From Belarus, 66 Fed. Reg. 33,528
(Dep't Commerce June 22, 2001) and accompanying Issues and Decision
Memorandum ....................................................................................................................12

Raw Honey From India:
Final Affirmative Determination of Sales at Less Than Fair Value and Final
Negative Determination of Critical Circumstances, 87 Fed. Reg. 22,188
(Apr. 14, 2022) ("Final Determination") (PR 356)........................................................ *passim*

Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the
People's Republic of China; Final Results of 1997-1998 Antidumping Duty
Administrative Review and Final Results of New Shipper Review,
64 Fed. Reg. 61,837 (Dep't Commerce Nov. 15, 1999), aff'd,
Luoyang Bearing Factory v. United States, 240 F. Supp. 2d 1268
(Ct. Int'l Trade 2002) .................................................................................................. 11-12

Wooden Bedroom Furniture from the People's Republic of China:
Final Results of the 2004-2005 Semi-Annual New Shipper Reviews,
71 Fed. Reg. 70,739 (Dec. 6, 2006) ................................................................................13

**MISCELLANEOUS**

Merriam Webster Dictionary (https://www.merriam-
webster.com/dictionary/withhold) ....................................................................................2

NONCONFIDENTIAL
VERSION

**PLAINTIFFS' REPLY BRIEF**

On behalf of the American Honey Producers Association and the Sioux Honey Association ("Plaintiffs"), we submit this reply to Defendant's and Defendant-Intervenors' Responses in opposition to Plaintiffs' Motion for Judgement Upon the Agency Record. See Defendant's Response in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record (ECF #28) ("Def. Br."); Defendant-Intervenors' Response in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record (ECF #31) ("DI Br."). Plaintiffs urge this Court to determine that certain aspects of the U.S. Department of Commerce's (the "Department" or "Commerce") final determination of sales at less-than-fair-value ("LTFV") concerning Allied Natural Product ("Allied") and Ambrosia Natural Products ("Ambrosia") (collectively "Respondents") are not supported by substantial evidence and are otherwise not in accordance with law and to remand the agency's determination for further proceedings.

I.    **THE DEPARTMENT'S RELIANCE ON THE RESPONDENTS' FINANCIAL STATEMENTS IS UNLAWFUL**

A.    **The Department's Factual Findings Under 19 U.S.C. § 1677e(a) Are Not Supported by Substantial Evidence**

The Government and Defendant-Intervenors have failed to rebut record evidence demonstrating that the Respondents in the underlying investigation withheld evidence from the record, significantly impeded the investigation, and provided information that could not be verified. Accordingly, the Department's claim that there was no gap in the record is not supported by substantial evidence. See Def. Br. at 30.

**NONCONFIDENTIAL
VERSION**

### 1.   The Respondents Withheld Information That the Department Requested and Impeded the Investigation

Defendant argues that Respondents did not withhold their 2020-2021 financial statements or impede the investigation because "once the documents became available," the Respondents "submitted the audited financial statements for the fiscal year ending March 31, 2021 (finalized at the end of December 2021 and mid November 2021, respectively) with their verification questionnaire responses." Def. Br. at 34. These claims are not supported by the record.  See Def. Br. at 33-36.  The record demonstrates that Respondents withheld their financial statements for weeks or months after those documents became available and did not submit them until verification, when the record was already closed and Plaintiffs could not rebut them.  The Respondents also each withheld their auditor's reports – which the Department has long held to be a core component of complete financial statements.

### a.   Respondents Impeded the Investigation by Withholding Their Financial Statements Until the End of the Investigation

To withhold is commonly defined as "to hold back from action," "to keep in custody," or "to refrain from granting, giving, or allowing." See Merriam Webster Dictionary (https://www.merriam-webster.com/dictionary/withhold). This is exactly what both Respondents did in this case.  As both Plaintiffs and Defendant have noted, the Department instructed Respondents to file complete, audited financial statements five separate times throughout the investigation, and the Respondents both stated that they would provide these statements as soon as they were available.  See Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record at 12-19 (ECF #21) ("Pls.' Br."); Def. Br. at 3-5, 7-8 (ECF #28).  Ambrosia's financial statements were finalized in mid-November 2021 and Allied's financial statements were finalized near the end of December 2021.  Issues and Decision Memorandum for the Final

**NONCONFIDENTIAL VERSION**

Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from India at 33 (Dep't Commerce Apr. 7, 2022) ("IDM") (PR 346); Def. Br. at 34.  Despite being available weeks or months earlier, Respondents did not submit copies of their financial statements until January 18, 2022 in response to the Department's questionnaire in lieu of verification.  See Verification from Trade Pacific PLLC to Sec of Commerce Pertaining to Allied Verification QR at Exhibit SVE-11 (CR 267-78) (PR 297) ("Allied QILOV"); Verification from Ambrosia Natural Products India Pvt. Ltd. to Sec of Commerce Pertaining to Ambrosia Verification QR at Exhibit VD-10 (a) (CR 249-61) (PR 296) ("Ambrosia QILOV").[1]  Accordingly, Respondents withheld their financial statements from the Department for several weeks or months and impeded the investigation.

Respondents represented that they would file their audited financial statements as soon as they were available, which was in November and December, respectively.  See Allied AQR at A-22 (CR 44-47) (PR 89-90); Ambrosia AQR at A-19 (CR 48-55) (PR 92-98); IDM at 33.  By withholding their financial statements for two months (Ambrosia), and almost one month (Allied), Respondents impeded the investigation by depriving Plaintiffs of the opportunity to submit new factual information to rebut, clarify, or correct them.[2]  The Government's claim that Plaintiffs were given an opportunity to rebut, clarify, or correct the information in the financial statements is incorrect.  Def. Br. at 36.  Commerce explicitly denied all parties that opportunity:

---

[1]   "Verification represents a point of no return.  The purpose of verification is 'to test information provided by a party for accuracy and completeness.'"  Goodluck India Ltd. v. United States, 11 F.4th 1335, 1344-45 (Fed. Cir. 2021) ("Goodluck") (citations omitted).

[2]   Investigations necessarily operate on tight timelines, and tardy submissions of data impede the investigation and hinder the petitioners' ability to meaningfully participate.  See Husteel Co. v. United States, 98 F. Supp. 3d 1315, 1336 (Ct. Int'l Trade 2015) ("In investigations, Commerce's statutory deadlines for completing the administrative proceedings are shortened.") (citation omitted).

NONCONFIDENTIAL
VERSION

> Normally, after an on-site verification, interested parties do not have an opportunity to submit factual information rebutting information collected by Commerce at verification. Accordingly, Commerce will not accept factual information from other interested parties to rebut your response to this request, but interested parties may address the information submitted in response to this request in case and rebuttal briefs.

See, e.g., Letter Issuing Allied QILOV at 2 (CR 248) (PR 292).  Respondents' withholding of the financial statements until verification thereby deprived Plaintiffs of the opportunity to submit new factual information to rebut, clarify, or correct them.

The Department's bald assertion that the Respondents did not withhold their audited financial statements does not make it true or supported by substantial evidence under these circumstances. Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Slip Op. 23-26 at 52, 2023 Ct. Intl. Trade LEXIS 35, at *76 (Mar. 1, 2023) ("Assan") ("It is axiomatic that '{c}onclusory statements that do not explain how a determination was reached are . . . insufficient.'") (citations omitted).  The Department does not explain why the delay in providing the information did not impede the investigation.[3]  Accordingly, Plaintiffs were deprived of an opportunity as a result of Respondents' withholding of information, and therefore Respondents impeded the investigation.

### b.   The Respondents Withheld Auditor's Reports, Which Were Requested by the Department

Respondents also withheld information by filing incomplete financial statements that were missing auditor's reports.  The initial questionnaire clearly instructed Respondents to

---

[3]    Defendant also argues that Plaintiffs had an opportunity to submit new factual information to rebut, clarify, or correct Respondents' previously submitted incomplete and unaudited trial balances. Def. Br. at 36.  The opportunity to comment on and submit new factual information concerning incomplete and unaudited financial statements is not a substitute for commenting on completed financial statements with an auditor's reports.

NONCONFIDENTIAL
VERSION

submit a copy of the auditor's report as a necessary part of the financial statements. See, e.g., Ambrosia's Initial Questionnaire at A-10 (PR 65) (emphasis added) ("Please provide the following financial documents for the two most recently completed fiscal years . . . audited, consolidated and unconsolidated financial statements (including any footnotes **and auditor's opinion**)"). The record shows that both Respondents actually possessed auditors' reports as part of their 2020/2021 financial statements but did not submit them.

The Department has recognized that auditor's reports are a necessary part of a complete financial statement because "{a}n auditor's statement provides an opinion regarding the reliability of a company's financial statements." Certain Iron Mechanical Transfer Drive Components from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 75,032 (Dep't Commerce Oct. 28, 2016) and accompanying Issues and Decision Memorandum at 45 ("CMTDC from China IDM"). Despite Commerce's well-established position that auditor's reports are critical to making financial statements complete and reliable in dumping cases (Pls.' Br. at 30-32, Section I.B., infra), Defendant argues that "Commerce determined that none of the alleged missing documents were either required or were 'not critical for Commerce's use for this investigation.'" Def. Br. at 32 (citing IDM at 33). The Department's claim that the documents were not "required" is refuted by the initial questionnaire instruction, which specifically requested the auditor's report, and is contrary to the agency's consistent past precedent of treating auditor's reports as a necessary element of the financial statements to determine reliability. See Pls.' Br. at 30-32; Section I.B. infra. Thus, the Government's claim is not supported by substantial evidence and is also an abuse of the agency's discretion. See Goodluck, 11 F.4th at 1342 ("Commerce abuses its discretion, for instance, if it

departs from a consistent practice without reasonable explanation.") (citing Consol. Bearings Co. v. United States, 348 F.3d 997, 1007 (Fed. Cir. 2003)).

Defendant claims its decision to rely on the financial statements without the auditor's report is lawful in this case because the agency "accepted Ambrosia's explanation that 'under the Indian Companies Act of 2013 Section 2(40), financial statements are only required to include' certain documents such as 'a balance sheet as at the end of the financial year; a profit and loss account; cash flow statement for the financial year; and any explanatory notes annexed to, or forming part of, any document referenced in the applicable sub-clauses.'" Def. Br. at 32 (citing IDM at 32-33). The Department's reliance on Ambrosia's interpretation of the Indian Companies Act of 2013 is misplaced and does not amount to substantial evidence. The Indian Companies Act of 2013 itself was never placed on the record by Ambrosia. Moreover, "{t}he Department interprets its regulations as meaning that foreign laws are factual information that must be placed on the record... It does not matter if the foreign laws are publicly available. The Department cannot be presumed to be aware of all foreign laws throughout the world." Issues and Decision Memorandum for the Final Affirmative Countervailing Duty Determination: Certain New Pneumatic OTR Tires from China (Dep't Commerce July 7, 2008) at 155, ref'd in 73 Fed. Reg. 40,480 (July 15, 2008). Ambrosia's interpretation of that law is also not supported by substantial evidence since the law itself is not on the record, and the Department may not rely on it to justify its decision to ignore its past practice of requiring the submission of auditor's reports. Without the law itself, Ambrosia's opinion is speculation as is the Department's reliance on it. To the extent that the Department is relying on this law or Ambrosia's interpretation of it

to justify its determination, therefore, the case should be remanded so that the Department can explain how its determination is supported by substantial evidence. See Pls.' Br. at 27-28.[4]

Regardless of what Indian law might or might not require, both respondents actually had auditor's reports prepared as part of the relevant financial statements and failed to submit them. The auditor's report is [                                                            ] of Ambrosia's submitted financial statement, demonstrating that it is required as part of a complete audited financial statement. See Ambrosia QILOV at Exhibit VD-10(a) (CR 249-61) (PR 296); IDM at 33. Indeed, Ambrosia admitted that it had, but did not submit, audited financial statements or the auditor's report with the verification response when it instead attempted to submit them as untimely new factual information during briefing. See Def. Br. at 8; Rejection of Ambrosia's Unsolicited New Factual Info (Feb. 8, 2022) (P.R. 322). Similarly, record evidence demonstrates that Allied was also in possession of the necessary auditor's report, but withheld it from the record. See Allied QILOV at Exhibit SVE-11 (referencing the auditor's report) (CR 267-78) (PR 297). As a result, the Court must remand the Department's determination as the agency's reasoning is not supported by substantial evidence.

Defendant also argues these documents were not necessary because "although it had requested the financial statements for FY 2020-2021, it 'did not explicitly specify that the accompanying audit reports be provided.'" Def. Br. at 31. Contrary to Defendant's claim, the

---

[4]   Further, to the extent the Department is somehow taking official notice of the Indian Companies Act of 2013, which it appears the agency did by citing the law in the IDM without it actually being on the record, the Department's findings are not supported by substantial evidence. Section 134(2) of the India Companies Act of 2013 provides that "{t}he auditors' report shall be attached to every financial statement." India Companies Act of 2013 § 134(2), available at https://www.mca.gov.in/Ministry/pdf/CompaniesAct2013.pdf. Thus, this foreign law explicitly contradicts the Department's finding that Ambrosia was not required to prepare and attach its auditor's report.

initial questionnaire (*like every standard questionnaire it issues*) explicitly defined the financial statements the Respondents were required to submit as "***including any footnotes and auditor's opinion.***" Ambrosia's Initial Questionnaire at A-10 (PR 65) (emphasis added). There can be no dispute from this language that the initial questionnaire instructed Respondents to include the auditor's report with the audited financial statements. The Department provides no evidence that it ever altered this requirement, and Defendant-Intervenors provide no record evidence that they ever requested to be excused from providing the auditor's reports. Instead, both Respondents repeatedly represented that the requested financial statements were not yet complete and would be provided when they were ready. See, e.g., Allied AQR at A-22 (CR 44-47) (PR 89-90) ("The audited financial statements for the FY 2020-2021 are not yet available, and will be provided when they are completed."); Ambrosia AQR at A-19 ("The audited financial statements for the FY 2020-2021 is not yet ready. It would be provided when it is ready."). Thus, the Department is incorrect that "necessary" information – as Commerce itself defined it in the questionnaire – is not missing from the record, and Commerce's finding that Respondents did not "withhold" information requested by the agency is not supported by the record.

## 2. The Respondents Provided Information That Could Not Be Verified and is Unreliable

Defendant argues that it was justified in relying on incomplete financial statements because it may not disregard information necessary to a determination even if the information does not meet all applicable requirements, if the submitter demonstrates that it acted to the best of its ability in providing that information and that the information was timely submitted, verifiable, sufficiently complete to serve as a reliable basis for reaching the applicable determination, and usable without undue difficulties. Def. Br. at 38 (citing 19 U.S.C. §

1677m(e)).  The Department, however, has not demonstrated that the Respondents in this case acted to the best of their ability, see Section I.C. infra, that the financials submitted were verifiable, or that they are sufficiently complete and reliable to serve as the basis for reaching the underlying determination.  The Government's position is perplexing given that record evidence shows that the Respondents had the auditor's reports and did not timely provide them; the missing auditor's reports are the very document on which the Department typically relies to determine the reliability of financial statements.

Defendant argues that Allied and Ambrosia's financial statements indicate they are audited (and presumably therefore reliable) because they contain "directors' and auditor's signatures and stamps."  IDM at 32-33 (PR 346); see also Def. Br. at 38.  Contrary to this claim, Ambrosia's financial statements for the POI do not have a single auditor's stamp or signature on any page of the document.  See Pls.' Br. at 24; Ambrosia QILOV at Exh. VD-10(a) (CR 249-61) (PR 296).  Ambrosia also did not provide any auditor's report, which would explain or qualify the information in the financial statements.  Accordingly, there is no record evidence supporting the Department's finding that Ambrosia's financial statements are audited, verifiable, or reliable.

Allied's financials contain significant deficiencies as well.  Allied also did not provide the auditor's report explicitly referenced in its financial statements, which would establish the reliability of the information.  Allied QILOV at Exhibit SVE-11.  Allied's submitted POI financial statements contain an auditor's signature on some, but not all, of the pages of the statement.  See id.; Pls.'s Br. at 18.  There were also unexplained discrepancies among the reported cost figures, which in light of the lack of the required auditor's signatures and reports further undermine the reliability of the documents.  See Pls.' Br. at 18-19.

NONCONFIDENTIAL
VERSION

Rather than relying on affirmative information on the record demonstrating the financial statements are complete and accurate, the Government improperly attempts to flip its burden by arguing that (1) Plaintiffs can identify no specific record evidence to demonstrate that the FY 2020-2021 financial statements were materially inconsistent or unreliable, and (2) Plaintiffs have not argued that Respondents' prior audited financial statements were unreliable. Def. Br. at 42. First, it is improper for the Department to shift the burden of production to the Plaintiffs. The party in control of the information has the burden of production, particularly here, where Commerce specifically requested the documents in the original questionnaire. See Tianjin Mach. Import & Export Corp. v. United States, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992) ("{T}he burden of creating an adequate record lies with respondents and not with Commerce."); see also Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1337-38 (Fed. Cir. 2016). Second, it is the Department that must justify its determination with substantial evidence, based on the record as a whole. Because Respondents bore the burden of production, Commerce cannot require Plaintiffs to prove a negative about what the missing documents would or would not show if they had been provided. Third, Plaintiffs in fact did identify a number of missing attachments as well as inconsistencies in Respondents' financial statements. See Pls.' Br. at 14-15, 18-19. The documents that would confirm whether Respondents' financial statements are complete, accurate, and reliable are the auditor's reports, which were not submitted.

### B.   Defendant Fails to Distinguish Its Prior Determinations that the Auditor's Reports Are Necessary

Defendant has not pointed to a single case in which an auditor's report existed and was not provided, but the Department nonetheless accepted the financial statements. The Department's consistent and long-held practice is to reject such financial statements, and its

decision in this case is contrary to this practice. Therefore, the Court must remand the Department's decision.  Importantly, at no point does the Government repudiate Commerce's long-held precedent that for a financial statement to be deemed complete, accurate, and reliable for use in an antidumping proceeding, it must contain the auditor's report.  See Pls.' Br. at 25-27. The Court should reject the Government's attempts to distinguish several of its determinations which demonstrate the importance of auditor's reports.

For example, Defendant attempts to distinguish the importance it placed on the auditor's report in Tapered Roller Bearings from China because there was allegedly additional evidence in that case "to suggest that Asian Bearing's methodology was not in accordance with the Institute of Charted Accountants of India, while the NEI was labeled a 'sick' company."  Def. Br. at 42. What the Defendant fails to acknowledge is that the Department only knew the records were not GAAP compliant and that the NEI was a "sick" company because the auditor's report explicitly stated so.  See Tapered Roller Bearings and Parts Thereof from the People's Republic of China, 64 Fed. Reg. 61,837, 61,842 (Dep't Commerce Nov. 15, 1999), aff'd, Luoyang Bearing Factory v. United States, 240 F. Supp. 2d 1268 (Ct. Int'l Trade 2002).  Specifically, the Department found that:

> the Auditor's Report included with Asian Bearing's 1997–98 financial statements expresses a clear reservation about how certain interest expenses (with their corresponding effects on depreciation and other expenses) have been reported, noting that the methodology is not in accordance with accounting principles recommended by the Institute of Chartered Accountants of India. The Auditor's Report also notes that Asian Bearing continues to be a ''sick'' company as defined by India's Sick Industrial Companies Act. Likewise, the auditors' endorsement of NEI's 1997–98 Financial Statements, as contained in the Auditor's Report, includes qualifications regarding the company's treatment of various overhead and SG&A expenses. As in TRBs 10, the

> qualifications indicate that the treatment of these expenses is not consistent with Indian GAAP.

Id. Rather than supporting the Government's argument, this case highlights the critical importance of the auditor's report to understanding the financial statements. Here, in contrast, the Department is **assuming** the accuracy of financial statements without having examined the auditor's report that would have provided the necessary context that the Department found so important in Tapered Roller Bearings from China.

Defendant also argues that Steel Concrete Reinforcing Bars from Belarus is "not relevant" because the Department explained that there were "vital issues" with the financial statements of an insolvent company in that case. Def. Br. at 39. One of the two "vital issues" identified was that the financials were missing sections of the auditor's report:

> Second, the copy of Bangkok Steel's financial statement on the record appears incomplete. Although this is the only copy of this statement that the petitioner was able to obtain, we are concerned that the statement is missing key sections, such as sections of the auditor's report, that are vital to our analysis and calculations.

Notice of Final Determination of Sales at Less Than Fair Value: Steel Concrete Reinforcing Bars from Belarus, 66 Fed. Reg. 33,528 (Dep't Commerce June 22, 2001) and accompanying Issues and Decision Memorandum at Comment 2. Nothing in that case suggests the auditor's report in this or any other case would be any less vital to the Department's analysis of a submitted financial statement.

Defendant further argues that WBF from China is "not relevant" because in that case, the Department declined to use a third party's financial statements due to "missing key sections." Def. Br. at 39. Defendant again fails to acknowledge that one of the "key sections" the Department cited as missing was the auditor's report:

NONCONFIDENTIAL
VERSION

> It is the Department's practice to disregard incomplete financial statements as a basis for calculating surrogate financial ratios where "...the statement is missing key sections, such as sections of the auditor's report, that are vital to our analysis and calculations."
>
> …
>
> In the current review, upon further examination of Jayaraja's financial statements, we have determined that Jayaraja's financial statements lack not a positive number for depreciation, but more significantly, they are missing an auditor's report.

See Wooden Bedroom Furniture from the People's Republic of China: Final Results of the 2004-2005 Semi-Annual New Shipper Reviews, 71 Fed. Reg. 70,739 (Dep't Commerce Dec. 6, 2006), and accompanying Issues and Decision Memorandum at 6. The Department expressly found that a missing auditor's report was "vital" and identified it as the most significant factor in rejecting the financial statement as incomplete and unusable.

Similarly, Defendant argues that CMTDC from China is "not relevant" because "Commerce determined in that case that it could not rely on a respondent's financial statements because they were incomplete and missing vital information for financial ratio calculation, and there was doubt whether the financial statements were, in fact, audited." Def. Br. at 39. Again, the Defendant fails to mention that the "missing vital information" and "doubt" about whether the financial statements were audited was because the financial statements did not include an auditor's report:

> We find that the original Thai Iron financial statements lack an auditor's statement. Therefore, we have determined that Thai Iron's financial statements are incomplete, and accordingly, we are not relying on these financial statements for use in the final determination.
>
> The Department disagrees with Powermach that Thai Iron's financial statements are useable because they contain the "vital" information necessary for financial ratio calculations. The

> Department cannot rely on the Thai Iron financial statements
> without an auditor's statement. An auditor's statement provides an
> opinion regarding the reliability of a company's financial
> statements.

CMTDC from China IDM at 45.

All of these cases make clear that Commerce's policy is that financial statements must be complete and include the auditor's statement before Commerce can rely on them. It is not the case here that auditor's reports either did not exist or were not available to the Respondents. To the extent the Department is now arguing that in order to disregard a financial statement, it must be missing both an auditor's report and other information, it does so for the first time contrary to its established practice. In fact, the Department could not have been more clear in the above-quoted decisions that it is unable to rely on a financial statement that is missing an auditor's report that was actually prepared for the company even if the financial statements may provide otherwise relevant information.

Defendant's failed attempts to distinguish its past practice highlight exactly why the Department's determination that "that Allied's and Ambrosia's FY 2020-2021 financial statements were not missing data and did not render the whole response{s} unreliable" is not supported by substantial evidence and is otherwise contrary to law.

C.      **The Department's Finding That Respondents Acted to the Best of Their Ability Is Not Supported by Substantial Evidence**

Defendant argues that Respondents cooperated to the best of their ability because they provided financial statements at the earliest possible time. Def. Br. at 41. Contrary to this claim, the record shows that both Respondents had auditor's reports, yet the submitted financial statements were missing those auditor's reports, despite explicit and clear instructions in the Department's initial questionnaire to do so. See, e.g., Ambrosia's Initial Questionnaire at A-10

(PR 65). While each respondent pledged multiple times to provide this information when it became available, neither respondent did so. <u>See</u> Pls.' Br. at 12-19. Respondents were well aware that their 2020/2021 complete audited financial statements were essential to the proceeding, as they covered the entire period of investigation, and the Department requested them five times. <u>See</u> Pls.' Br. at 12-19 (ECF #21), Def. Br. at 3-5, 7-8 (ECF #31). Thus, neither Respondent can be said to have acted to the best of their abilities to comply with the Department's request for complete, audited financial statements.

Waiting until verification to submit what turned out to be incomplete financial statements was not reasonable. Ambrosia's financial statements were finalized in mid-November and Allied's were finalized near the end of December. <u>IDM</u> at 33 (PR 346). That delay was not harmless, irrelevant, or reasonable. Respondents submitted their financial statements when Plaintiffs could no longer submit information to rebut, clarify, or correct them. "Verification represents a point of no return. The purpose of verification is 'to test information provided by a party for accuracy and completeness.'" <u>Goodluck</u>, 11 F.4th at 1343-44 (citations omitted). Thus, neither Respondent had done "the maximum it is able to do" in responding to a request for information. <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1382 (Fed. Cir. 2003) ("<u>Nippon</u>").

Conclusory statements that the Respondents cooperated to the best of their ability despite not providing auditor's reports and withholding the 2020/2021 financial statements from the Department until the 11th hour do not demonstrate that Respondents did the "maximum they were able to do" under the <u>Nippon</u> standard. <u>See</u> <u>Assan</u>, Slip Op. 23-26 at 52, 2023 Ct. Intl. Trade LEXIS 35, at *76 ("It is axiomatic that '{c}onclusory statements that do not explain how a determination was reached are . . . insufficient.'"); <u>Nippon</u>, 337 F.3d at 1382. If Respondents

-15-

had done the maximum they were able to do, the audited financial statements, including the auditor's reports, would have been timely submitted.

Defendant has failed to cite a single case in which it has accepted incomplete financial statements that were missing an auditor's report, or which stands for the proposition that an auditor's report is not essential for the Department to rely on a financial statement. The Department's determination is not support by substantial evidence and is otherwise contrary to law. Accordingly, this Court should remand the Department's determination for further explanation and analysis.

II.  **THE DEPARTMENT'S RELIANCE ON RESPONDENTS' ACQUISITION COSTS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

A.  **The Department Misstated Plaintiffs' Argument and Conducted the Wrong Analysis**

As the Department did below, Defendant claims it was proper to rely on beekeeper costs as the benchmark for measuring the reasonableness of Respondents' acquisition costs by claiming the beekeepers did not fail to cooperate to the best of their ability under 19 U.S.C. § 1677e(b). Def. Br. at 15; IDM at 38-43 (PR 346). This argument is non-responsive to Plaintiffs' claims and is a misapplication of the law. The Department should have determined whether there is a gap in the record based on the facts available standard under 19 U.S.C. § 1677e(a). Because the Department applied the wrong standard, the Court must remand for the agency to first consider whether there is a gap in the record under 19 U.S.C. § 1677e(a).

Plaintiffs and Defendant agree that the appropriate costs for raw honey under normal circumstances are beekeepers' cost of production. IDM at 23 (PR 346). Plaintiffs and Defendant also agree that the beekeepers' costs submitted in this investigation were not useable. Id. at 25 (PR 346); Def. Br. at 19. As a result, the statute required the Department to select from

the facts otherwise available in determining the cost of production of the raw honey. 19 U.S.C. §

1677e(a); Pls.' Br. at 38. Consistent with the statute, Plaintiffs argued below that the Department

should rely on NHBI data "as facts available to value the beekeeper costs," i.e., as neutral facts

available. Petitioners did not argue that the respondent exporters failed to cooperate to the best of

their ability or that adverse inferences should apply to them, only that an appropriate facts

available should be applied to substitute for the unusable beekeeper costs. See Letter From

Kelley Drye & Warren LLP To Sec of Commerce Pertaining to Petitioners Re-Submission of

Case Brief To Remove Bracketing at 5-24 (CR 294) (PR 327-28). The Department nonetheless

mistakenly applied the adverse facts available standard rather than the facts available standard

when conducting its analysis:

> **Commerce's Position**: We disagree with the petitioners that the application of AFA to Ambrosia and Allied is warranted regarding the cost responses provided by their middleman and beekeeper-suppliers. Therefore, for the final determination, we have continued to rely on Allied and Ambrosia's reported costs, as adjusted, for the final determination.
>
> . . .
>
> The petitioners argue that AFA should be applied to Allied and Ambrosia because the cost data submitted by their beekeeper-suppliers are undocumented, unverifiable, and incomplete, and the data are, therefore, unreliable.
>
> . . .
>
> Based on the foregoing discussion, we find that AFA is not warranted for Allied or Ambrosia's beekeeper-suppliers' and middlemen/beekeeper-supplier, as these interested parties have submitted complete and usable cost responses. While these comments expose the complications associated with requiring small unsophisticated beekeeping operations to calculate and report COP data, we find that Allied and Ambrosia's selected beekeepers fully cooperated and responded to the best of their abilities using the records available to them.

IDM at 38-43 (PR 346).  Defendant's brief mirrors this same misapplication of the facts and legal analysis.  Def. Br. at 15.  By applying the incorrect analysis, the Department's determination is not supported by substantial evidence.  Whether the beekeepers cooperated to the best of their ability using their limited records is irrelevant because the Department determined it could not rely on those costs for purposes of calculating Respondents' cost of production.

The Department had multiple sets of data on beekeeper costs in India on which to rely including reliable government sources such as the NHBI, Ministry of Micro, Small & Medium Enterprises, Khadi and Villages Commission and multiple websites demonstrating costs for beekeeping in India.  The Department apparently assumed that because the sources of beekeeper costs resulted in a higher margin to the respondents, they were automatically an application of "adverse facts."  See Itochu Bldg. Prods. Co. v. United States, Slip Op. 17-66 at 16, 2017 Ct. Intl. Trade LEXIS 67, at *17 (Ct. Int'l Trade June 5, 2017) ("It goes without saying that Commerce must put aside any consideration of who wins and who loses, i.e., whether the margin is driven higher or lower.").  Plaintiffs have argued that the Department's choice was not supported by substantial evidence because other sources of raw honey costs were superior to the acquisition costs.  Rather than address Plaintiffs' arguments, however, the Department conducted the incorrect analysis by presuming that acquisition costs must be used unless the Respondents failed to cooperate to the best of their ability.  The Court must therefore remand this case for the Department to apply the correct legal analysis.

**B.**     **The Department's Finding That the Acquisition Costs Are a Reasonable Proxy for Beekeepers' COP Is Not Supported by Substantial Evidence**

The Department's reliance on the limited beekeepers' cost as support for determining that acquisition costs were a reasonable proxy for the beekeepers' costs is not supported by substantial evidence.  The Department's IDM and Defendant's response brief detail all of the problems associated with using information reported by small, unsophisticated beekeepers. Because of these flaws, the Department determined and argues here that the beekeepers' costs are unreliable and unrepresentative, and that they could not be used to calculate Respondents COP.  IDM at 22-27 (PR 346); Def. Br. at 19.  Plaintiffs agree.

Specifically, the Department found that small, unsophisticated beekeepers had limited records, relied on assumptions and estimates rather than actual *verifiable* records, often provided incomplete or unreliable cost data, are not required by Indian law to maintain books and records, prepare financial statements, or file tax returns, and could not provide invoices to verify expenses.  See IDM at 24, 26, 38-39 (PR 346); Def. Br. at 18.  The Department also determined that it would be impossible to examine a representative selection of beekeepers, and that it would take "scores" (i.e., a minimum of 40, in the Department's view) to get a statistically valid sample.  IDM at 25 (PR 346); Def. Br. at 19.  Accordingly, the Department did not use the sample beekeepers' costs to calculate Respondents' COP.  IDM at 25 (PR 346); Def. Br. at 19.

These are all valid points that apply equally to determining whether the use of beekeeper costs to determine if the Respondents' acquisition costs were reasonable.  The Department, however, subsequently ignored these arguments when it used an extremely limited sample of purchases from middlemen and beekeepers – two of Allied's middlemen-suppliers and two beekeeper-suppliers to those middlemen, and Ambrosia's one direct beekeeper-supplier, and one

NONCONFIDENTIAL
VERSION

middleman and its beekeeper-supplier – to determine that the Respondents' acquisition costs were a reasonable proxy for the beekeepers' costs. See IDM at 26 (PR 346).

The Department's reliance on the statistically invalid and otherwise unreliable sample beekeepers' costs to determine that acquisition costs are a reasonable proxy for beekeepers' costs is not supported by substantial evidence or logic. First, the Department fails to explain how a statistically invalid sample, by its own admission, is reliable or representative as a benchmark. The Department acknowledged that it would require data from "scores" of beekeepers in this investigation to obtain representative data. See IDM at 25 (PR 346). The Department, however, only collected data from four beekeepers, despite noting that "the actual number of beekeeper suppliers to each exporter {} number in the thousands." IDM at 25 (PR 346). The Department's determination that limited beekeeper COP is not representative or statistically significant, and is unusable, in one instance, and its decision that this same sample is "reliable" and representative in another, is contradictory on its face. A price that is above an unreliable cost is not in and of itself reliable. Because the only benchmark supporting the Department's reliance on acquisition costs is itself unreliable, the agency's decision is not supported by substantial evidence. As this Court has recognized, the Department's conclusions must be internally consistent, and finding the beekeepers costs unreliable for purposes of calculating costs, but reliable to serve as the only benchmark supporting alternative costs is inconsistent. See Husteel Co. v. United States, 491 F. Supp. 2d 1283, 1294 (Ct. Int'l Trade 2007) (citing NSK Ltd. v. United States, 390 F.3d 1352, 1357-68 (Fed. Cir. 2004)).

Defendant argues that it explained at length in the IDM why the beekeepers' data was, in fact, reliable and verifiable. Def. Br. at 27. To the contrary, the Department did not discuss anywhere in its IDM how it determined that the beekeepers' responses were verifiable. See

generally IDM (PR 346). The Department notes that, in its experience, small beekeepers "typically had limited records, or limited access to technology due to their remote locations, which meant more reliance on assumptions and estimates than actual verifiable records." Id. at 24 (PR 346). Yet it does not explain anywhere in its IDM how the agency determined that these limited, unsophisticated beekeepers' records were accurate or verifiable. Indeed, the Department specifically acknowledged that beekeepers' records rely on assumptions and estimates. It is especially telling that the Department did not even attempt to verify the information of any of the beekeepers in this investigation. The Department did not explain how it determined the spreadsheets that were produced for this proceeding and handwritten notepad pages, which comprised a significant amount of beekeepers' records, were reliable or verifiable. Instead, Defendant notes that the beekeepers cooperated to the best of their ability, which is not the same as determining the beekeepers' records are reliable or verifiable. Id. at 38 (PR 346). Defendant further admits that beekeepers' records in this proceeding were not verifiable, noting "although Commerce typically requests that respondents provide supporting invoices to verify expenses, Ambrosia's middleman/beekeeper-supplier provided the only records that it maintains, which is an expense and salary register that records each transaction." Def. Br. at 26. The "records" consisted of handwritten notes on a notepad. See Ambrosia October 27, 2021 Beekeeper 1 SQR at Exhibits B1S1-3 to B1S1-5 (CR 162-64) (PR 220). The Department failed to establish that the beekeepers' records were either verifiable or reliable.

In sum, the Department has relied on a sample that it itself notes is invalid and entirely failed to address how the beekeepers' records are verifiable or reliable. Further, as noted in Section II.C. infra, a there is substantial record evidence that the beekeepers' costs were not reliable. Because the Department used unrepresentative, unreliable, and unverifiable data to

-21-

NONCONFIDENTIAL
VERSION

determine acquisition costs were a reasonable proxy for the beekeepers COP, its decision is not supported by substantial evidence.

**C.    The Department Failed to Consider Cost Data on the Record That Demonstrates the Beekeepers' COP Is Unreliable**

The Department failed to consider substantial record evidence that detracts from its determination. In determining whether substantial evidence exists, the court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"  Nippon, 337 F.3d at 1379.  The Department refused to address significant record evidence that demonstrated the beekeepers' costs were incomplete and unreliable.  See IDM at 22 (PR 346).  Presented with multiple reliable values for honey cost of production in India, including the NHBI data, demonstrating that the beekeepers' costs were unrepresentative and unreliable, the Department simply ignored this evidence.  Id. at 22 ("because the selected middlemen and beekeeper costs are reliable, Commerce has no grounds, for this purpose, to resort to using the NHBI data from the GOI as a surrogate for the cost of producing raw honey.") (PR 346).

Defendant argues that it addressed the detracting evidence, but the record contradicts that claim.  Def. Br. at 28 (citing Itochu Bldg. Prods. v. United States, 163 F. Supp. 3d 1330, 1337 (Ct. Int'l Trade 2016)).  The Department's determination includes no analysis of the information submitted by Plaintiffs, which were a fundamental piece of Plaintiffs' argument demonstrating the costs reported by the beekeepers were incomplete and unreliable.  See generally IDM. Further, the Department's analysis of Plaintiffs' particular market situation ("PMS") allegation supported rejecting beekeeper data and relying on government sources of data:

> It is not clear from these sources whether the price is based on a broad index that covers multiple types of honey from multiple

NONCONFIDENTIAL
VERSION

producers or is simply a single producer's price for a single type of merchandise at one point in time. Further, certain product characteristics are critical to the pricing of honey (e.g., color, floral variety, organic certification, etc.). Therefore, the lack of details regarding these price quotes precludes an evaluation of the reliability and representativeness of the data.

More reliable pricing data appear to be available, such as the monthly wholesale honey price index data from the GOI that the petitioners provided in the Petition.

IDM at 15 (PR 346). The Department acknowledges that product characteristics are critical to the value of honey and that trusted government sources of information are superior in the context of the PMS. See id. The Department also acknowledges that broad data provided by the GOI is more reliable than "a single producer's price for a single type of merchandise at one point in time." Id. This, however, is the same exact type of information that the Department determined was a reliable benchmark for acquisition costs. Id. at 22 (PR 346). The Department decided that incomplete beekeeper costs, which were handwritten in a notepad and also not specific to the critical product characteristics of honey (e.g., color, floral variety, organic certification, etc.), were reliable and representative. See id. at 22-27, 38-43 (PR 346). The Department did not even consider additional sources of cost data on the record that detract from its conclusion (including more reliable data from the NHBI, which is part of the GOI). See IDM at 22 (PR 346). Accordingly, this Court should remand this case for the Department to consider evidence that fairly detracts from its finding that beekeeper costs are a reasonable benchmark for determining acquisition costs are appropriate.

## III.   **CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that this Court:

1. Grant Plaintiffs' motion for judgment upon the agency record;

**NONCONFIDENTIAL
VERSION**

2.  Remand the Department's <u>Final Determination</u> for the agency to reconsider its determination consistent with Plaintiffs' opening brief and this reply; and

3.  Provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/Joshua R. Morey
R. ALAN LUBERDA
MELISSA M. BREWER
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Plaintiffs

Dated:  May 23, 2023

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to this Court's Order dated October 7, 2022 (ECF No. 19), setting a 7,000 word limit to the Reply Brief of Plaintiffs the American Honey Producers Association and the Sioux Honey Association ("Plaintiffs"), counsel for Plaintiffs certifies that the attached Reply Brief contains 6,971 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

/s/ Joshua R. Morey
R. ALAN LUBERDA
MELISSA M. BREWER
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
aluberda@kelleydrye.com
mbrewer@kelleydrye.com
jmorey@kelleydrye.com
mpereira@kelleydrye.com

Counsel to Plaintiffs

Dated:  May 23, 2023